UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BRUCE P. HANEY,

    Plaintiff,

  v.

P. SULLIVAN, et al.,

    Defendants.

Case No. 17-CV-3808 LHK (PR)

**ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY
JUDGMENT; DENYING DISCOVERY
MOTIONS; DENYING STAY MOTION**

Re: Dkt. No. 40, 48, 49, 50, 55

Plaintiff is a California prisoner incarcerated at Salinas Valley State Prison ("SVSP"). He has filed a *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983. In the operative pleading, plaintiff asserts two claims.

Plaintiff's first claim, for violation of the Eighth Amendment, is pled against five defendants: M. Curiel, a correctional counselor at SVSP ("Counselor Curiel"); P. Sullivan, a captain at SVSP ("Captain Sullivan"); K. Kumar, a chief medical executive and doctor at SVSP ("Dr. Kumar"); E. Doehring, then a nurse practitioner at SVSP ("Nurse Doehring"); and H. Liu, an appeals examiner for the California Department of Corrections and Rehabilitation ("Appeals

Examiner Liu") (collectively, "defendants"). Plaintiff alleges that defendants failed to grant plaintiff's request for single-cell accommodation, and that this exhibited deliberate indifference to plaintiff's serious medical needs in violation of the Eighth Amendment.

Plaintiff's second claim, for violation of the First Amendment, is pled against Counselor Curiel. Plaintiff alleges that, when plaintiff threatened to file a civil rights complaint regarding defendants' alleged deliberate indifference, Counselor Curiel retaliated against plaintiff in violation of the First Amendment by recommending he be transferred to a prison farther from his family than SVSP.

Defendants have filed a motion for summary judgment. *See* Dkt. No. 40 ("MSJ" or "Summary Judgment Motion"). Plaintiff has filed an opposition, *see* Dkt. No. 56 ("Opposition") and defendants have filed a reply. For the reasons stated below, the Court **GRANTS** defendants' Summary Judgment Motion.

Plaintiff filed three motions for additional discovery, and defendants moved to stay discovery pending the Court's decision on the Summary Judgment Motion. For the reasons stated below, the Court **DENIES** these motions.

## I. BACKGROUND

The following facts, given in chronological order, are viewed in the light most favorable to plaintiff. *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999) (stating that, at summary judgment, courts must view the evidence in the light most favorable to the nonmoving party). Unless otherwise indicated, the facts are undisputed.

### A. Plaintiff's Previous Incarceration, Medical History

Plaintiff was previously incarcerated from 2002 to 2012. *See* Dkt. No. 40-2 ("Medical Note") at AGO 42; Dkt. No. 40-6 ("Deposition" or "Dep.") at 47. The record does not reveal the reason for plaintiff's previous incarceration. During plaintiff's previous incarceration, he

underwent rectal surgery for hemorrhoids. Med. Note. Plaintiff's surgery took place in approximately 2009. Dep. at 47.

Following the surgery, and beginning in approximately 2012, plaintiff began experiencing rectal incontinence. *See* Dep. at 47:17-18; *see also* Med. Note. This means that plaintiff cannot control his bowel movements. *See* Dkt. No. 22 ("First Amended Complaint" or "FAC") at 3.

### B.     Plaintiff's Current Incarceration, Cellmate History

Plaintiff was convicted of attempted voluntary manslaughter. *See* Dep. at 28:23-25. Plaintiff has been incarcerated since May 18, 2015 on this conviction, *see id.*, and is currently housed at Silicon Valley State Prison ("SVSP"), *see* FAC. This is a "Level IV" facility, which defendants explain is the highest security level. *See* Dkt. No. 40-9 ("Counselor Curiel Declaration") at ¶ 3; *see also* MSJ at 6.

Plaintiff had six or seven cellmates between May 18, 2015 and August 20, 2016. *See* Dep. at 29:3-12, 29:22-30:17, 31:14-20, 41:15-21, 45:13-18 (plaintiff recalls six cellmates); *but see* Dkt. No. 40-4 at AGO 01-02 (listing seven cellmates). Plaintiff has had no cellmates since August 2016. *See* Dep. at 47:22-48:10.

Plaintiff has had one physical fight with a cellmate. *See id.* at 46:13-15. In plaintiff's First Amended Complaint ("FAC"), he suggests this fight was due to plaintiff's rectal incontinence. *See generally*, FAC. However, in Deposition plaintiff stated this fight was not due to plaintiff's rectal incontinence and was instead because his cellmate "didn't want nobody in the cell with him." Dep. at 34:24-35:5.

### C.     Plaintiff's Request for Single-Cell Status

Plaintiff states that on September 7, 2016, he asked M. Curiel, a correctional counselor at SVSP ("Counselor Curiel") to be single-celled because plaintiff's rectal incontinence has caused fights with cellmates. FAC at 3. Plaintiff claims that a previous spinal surgery prevents plaintiff

from defending himself in a fight with a cellmate.  *Id.*  Plaintiff has also stated that he was not injured in his single fight with a cellmate.  Dep.at 33:5-33:7, 35:12-14.

Counselor Curiel directed plaintiff to get a doctor's recommendation for single-cell status. FAC at 3.  On September 13, 2016, plaintiff saw E. Doehring, then a nurse practitioner at SVSP ("Nurse Doehring").  *Id.*  In that appointment Nurse Doehring examined plaintiff and wrote medical chronos issuing single-cell status for plaintiff.  *Id.*

On September 20, 2016, plaintiff appeared before a classification committee.  FAC at 3-A. The classification committee consisted of at least Counselor Curiel and P. Sullivan, a captain at SVSP ("Captain Sullivan") who chaired the classification committee.  *Id.*; *see also* Dkt. No. 40-4 (identifying Counselor Curiel as the "recorder" of the committee hearing and Captain Sullivan as the "chairperson").  During the committee hearing, plaintiff contends that Counselor Curiel told Captain Sullivan to deny the medical chrono.  FAC at 3-A.  Plaintiff claims that Captain Sullivan remarked that Nurse Doehring was not a doctor, and MRIs (referring to plaintiff's spinal x-rays) were overrated.  *Id.*  On October 6, 2016, plaintiff saw Nurse Doehring again, who removed the single-cell status.  *Id.*

Defendants explain that, although Nurse Doehring could recommend plaintiff be considered for single-cell status, Nurse Doehring could not order single-cell status based on rectal incontinence.  *See* MSJ at 4.  The California Correctional Health Care Services has promulgated a document entitled "Comprehensive Accommodation Procedure," which states that health care staff may not order single-cell housing except for control of infectious disease or for mental health reasons.  *See* Dkt. No. 40-8 at 2.

### D.     California's Framework for Administrative Appeals

The California Department of Corrections and Rehabilitation ("CDCR") provides its inmates and parolees the right to appeal administratively "any policy, decision, action, condition,

or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1(a). The CDCR also provides its inmates the right to file administrative appeals alleging misconduct by correctional officers. *See id.* Under the regulations, as amended effective January 28, 2011, the informal grievance level was omitted and there are now three levels: first level appeal, second level appeal, and third level appeal. Cal. Code Regs. tit. 15, § 3084.7. "Administrative exhaustion within California requires the completion of the third level of administrative review." *Jackson v. Fong*, 870 F.3d 928, 933 (9th Cir. 2017). As of January 28, 2011, California regulations also require that the appeal name "all staff member(s) involved" and "describe their involvement in the issue." Cal. Code Regs. tit. 15, § 3084.2(a)(3).

### E.     Plaintiff's Single-Cell Administrative Appeal

On September 30, 2016, plaintiff filed a grievance regarding the denial of his single-cell request. *See* Dkt. No. 40-12 at AGO 14-17 ("Single-Cell Grievance"). Plaintiff stated that he had been seen by Nurse Doehring, who "believed [plaintiff's] medical condition required single-cell housing." *Id.* at AGO 14, 17. Plaintiff stated that a classification committee then evaluated Nurse Doehring's statements. Plaintiff stated that, acting as a member of the committee, Captain Sullivan denied plaintiff's single-cell housing request. *Id.* at AGO 17. Plaintiff stated that Captain Sullivan "ha[d] over-stepped his authority by denying a treating physician's [sic] recommendation, thereby placing [plaintiff's] health at risk," and that this "show[ed] a deliberate indifference to [plaintiff's] serious medical needs." *Id.* Plaintiff's initial Single-Cell Grievance does not refer to any actions by Counselor Curiel. *See id.*

The Single-Cell Grievance bypassed the first level of review. *Id.* at AGO 14. There is thus no first-level decision on the Single-Cell Grievance, which proceeded directly to second-level review.

1     In the FAC, Plaintiff alleges that at the second level, Dr. Kumar "responded" to plaintiff's

2  Single-Cell Grievance and "conspired with . . . [Captain] Sullivan and . . . Counselor Curiel" to

3  violate plaintiff's Eighth Amendment rights.  FAC at 3-B.

4     A review of the record reveals that at the second level, plaintiff's Single-Cell Grievance

5  was evaluated by non-defendant SVSP Chief Deputy Warden Binkele ("Chief Deputy Warden

6  Binkele").  *See* Dkt. No. 40-12 at AGO 18-20 ("Single-Cell 2d Level").  At the second level,

7  Chief Deputy Warden Binkele summarized plaintiff's Single-Cell Grievance, noted plaintiff's file

8  included "no documented acts of in cell violence or being the victim of any in cell violence," and

9  summarized the actions of the classification committee.  *Id.* at AGO 18-19.  Chief Deputy Warden

10  Binkele described actions by Dr. Kumar and Nurse Doehring that had not been included in the

11  Single-Cell Grievance.  *Id.* at AGO 19.  Relevant here, Chief Deputy Warden Binkele stated that,

12  after plaintiff filed the Single-Cell Grievance, "Dr. Kumar stated that she would inform [Nurse

13  Doehring] to remove Inmate Haney's single-cell status," and Nurse Doehring did so, "stat[ing]

14  that she made a mistake placing single cell status on Inmate Haney's" paperwork.  *Id.* at AGO 19.

15  As noted in section I.C, Nurse Doehring could not order single-cell status based on rectal

16  incontinence.  *See* MSJ at 4; *see also* Dkt. No. 40-8 at 2 (California Correctional Health Care

17  Services document stating health care staff may not order single-cell housing except in specific

18  circumstances not present here).  Chief Deputy Warden Binkele denied plaintiff's request for

19  single-cell status and monetary compensation.  Dkt. No. 40-12 at AGO 20.

20     Plaintiff then appealed to the third level of review.  His arguments to the third level of

21  review were added to the form used for the Single-Cell Grievance.  *See* Single-Cell Grievance.

22  Because plaintiff's arguments appear on one form, references to the Single-Cell Grievance refer to

23  the form.  Where necessary, the Court will differentiate between arguments made in plaintiff's

24

25

26  Case No. 17-CV-3808 LHK (PR)
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING DISCOVERY
27  MOTIONS; DENYING STAY MOTION

6

28

initial Single Cell Grievance, and the arguments plaintiff expanded on the Single-Cell Grievance form when appealing to the third level of review.

In plaintiff's appeal to the third level, he added facts stating that Nurse Doehring had removed her recommendation for single-cell status, that this was done at the behest of "her boss" (Dr. Kumar), and that this action was "a violation of federal law." *See id.* at AGO 16. The expanded allegations do not allege any wrongdoing by Counselor Curiel. *See id.*

At the third level a decision was issued by Appeals Examiner Liu. *See* FAC at 3-C; Dkt. No. 40-12 at AGO 11-13 ("Single-Cell 3d Level"). In the Single-Cell 3d Level, Appeals Examiner Liu summarized plaintiff's allegations from the initial Single-Cell Grievance and the findings from the Single-Cell 2d Level. *See id.* Appeals Examiner Liu concluded that "SVSP is enforcing the rules and regulations as required by the departmental and institutional policy," summarized those rules, and concluded as follows:

> The appellant has failed to provide any new or compelling information that would warrant a modification of the decision reached by the institution. The appellant has failed to submit any evidence that the actions of the staff were inappropriate . . . . Relief shall not be provided at the T[hird] L[evel of] R[eview].
> The appellant has added new issues and requests to his appeal. The additional requested action is not addressed herein as it is not appropriate to expand the appeal beyond the initial problem and the initially requested action.

Single-Cell 3d Level at AGO 13. Appeals Examiner Liu stated that "[t]his decision exhausts the administrative remedy available to the appellant." *Id.*

### F. Plaintiff's Request for a Transfer

Four months later, on May 24, 2017, plaintiff met with Counselor Curiel regarding plaintiff's annual review. FAC at 3-D. In that meeting, plaintiff informed Counselor Curiel that plaintiff wished "to transfer south to a prison closer to [his] home, children, and family." *Id.* Plaintiff specifically requested a transfer to a facility in San Luis Obispo, San Diego, Kern

County, or Lancaster. Dep. at 78:12-19. Each of these facilities is "Level III," a lower-security level than SVSP, which is a Level IV facility. Counselor Curiel Decl. at ¶ 6.

Plaintiff contends that Counselor Curiel instead recommended that plaintiff be transferred north to California Medical Facility, and that this recommendation was in retaliation for plaintiff's "expressed intention" to file the instant lawsuit. FAC at 3-D. Plaintiff concedes that his theory requires Counselor Curiel to have retaliated against plaintiff by endorsing him for a transfer based on a complaint that plaintiff filed afterward. Dep. at 86:20-23. Plaintiff also concedes that he has no evidence to support his theory, but states, "That is my belief. There's no other explanation." *Id*. at 86:23-88:14.

Defendants dispute plaintiff's theory and present facts to support a different explanation. Counselor Curiel recommended to a classification committee that plaintiff be "affix[ed] a BEH administrative determinant" ("Determinant"). Counselor Curiel Decl. ¶ 7. This Determinant means that plaintiff's "record of behavior indicates [he is] capable of successful placement at a facility with a security level lower than that which is consistent with his . . . placement score." Cal. Code Regs. tit. 15 § 3375.2(b)(3). Affixing this Determinant would render plaintiff eligible to transfer to a Level-III prison based on his "record of behavior indicating that he was capable of successful placement at a Level III facility." Counselor Curiel Decl. ¶ 7. Counselor Curiel states the classification committee approved this recommendation, voting to affix the Determinant and to recommend plaintiff be transferred to his preferred San Luis Obispo or San Diego facilities. *Id*. Once an inmate has been given a Level-III determinant, that inmate is required to be endorsed for transfer to a Level-III facility unless there are no such options available. *Id*. ¶ 10.

Defendants explain that the committee's recommendation was then forwarded to a classification staff representative ("CSR"), who "determines appropriate housing in keeping with Department needs, safety and security, the inmate's placement score and administrative

determinants." *Id*. at ¶ 9; MSJ at 7 (defining the CSR's role) (citation omitted). Counselor Curiel represents that she "did not know which CSR was assigned[,] . . . was not involved in the CSR's decision about where to endorse Plaintiff[, and] . . . did not contact the CSR." Counselor Curiel Decl. ¶ 9.

The CSR stated that plaintiff's "requested institutions were not available," and so endorsed plaintiff for a transfer north to California Medical Facility ("CMF") "based on the availability of institutional programs and housing." Dkt. No. 40-4 at AGO 08-09. Plaintiff submitted a request to the CSR that stated the endorsement north was "an error," and asking that "the endorsement for CMF be canceled and [plaintiff] be retained here at 'SVSP.'" Dkt. No. 40-4 at AGO 10. Counselor Curiel repeated the CSR's explanation to plaintiff: that plaintiff's requested institutions were not available. *Id*. However, because plaintiff wished to remain at SVSP, the CSR's endorsement was allowed to expire, and plaintiff was not transferred. Dep. at 80:10-12, 93:21-94:4.

### G.    Plaintiff's Transfer Administrative Appeal

The parties have submitted multiple grievances related to plaintiff's transfer request.

Defendants submit a grievance plaintiff filed on June 26, 2017. *See* Dkt. No. 40-13 at AGO 23-26 ("Transfer Grievance"). In the Transfer Grievance, plaintiff stated that he had been endorsed to transfer to CMF on a Level III override, which appears to refer to the CSR's recategorization of plaintiff's security level. *Id*. Plaintiff stated that he was refusing this transfer and stated that he "may as well remain where [he's] at." *Id*.

The Transfer Grievance bypassed the first level of review. *Id*. at AGO 23. There is thus no first-level decision on the Transfer Grievance.

1    At the second level, the Transfer Grievance was evaluated by Chief Deputy Warden

2   Binkele.  *See id*. at AGO 29.  Chief Deputy Warden Binkele summarized the Transfer Grievance

3   and the committee's and CSR's actions.  *Id*. at AGO 28.  Chief Deputy Warden Binkele explained:

4            [T]he CSR followed policy noting that the requested institutions were
             not available and endorsed [plaintiff] to an alternate Level III facility.
5            Once the BEH . . .  Administrative Determinant is affixed, it is not
             appropriate to refer or endorse for Level IV housing unless there are
6            no other Level III options available . . . While reasonable attempts
             were made to house the appellant closer to his family, there was no
7            availability of housing at CMC-III, RJD-III and WSP-III."

8   *Id*. at AGO 29.  Chief Deputy Warden Binkele denied plaintiff's second-level appeal.

9            Plaintiff then appealed to the third level of review.  *See* Dkt. No. 40-13 at AGO 21-22

10  ("Transfer 3d Level").  The appeals examiner, non-defendant Allen ("Appeals Examiner Allen"),

11  summarized the Transfer Grievance and second-level response and concluded that plaintiff was

12  "properly endorsed for transfer," and plaintiff's "transfer request was properly reviewed and

13  evaluated."  *Id*. at AGO 21.  Appeals Examiner Allen explained:

14           A classification committee makes a recommendation for transfer, but
             the CSR has the authority to endorse an inmate to any institution,
15           regardless if the institution was requested or not.
                 Unfortunately, due to the current inmate housing situation
16           within the CDCR and the associated demand for bed space, the
             Department is prevented from accommodating all inmate transfer
17           requests.

18  *Id*. at AGO 21-22.  Appeals Examiner Allen denied plaintiff's appeal on October 3, 2017.  *Id*. at

19  AGO 21.

20           Plaintiff submitted additional grievances with his Opposition, which appear related to the

21  transfer denial.  *See* Dkt. No. 56 at Ex. E-F ("First Additional Grievance," "Second Additional

22  Grievance," and collectively, "Additional Grievances").

23           Plaintiff's First Additional Grievance was filed on June 22, 2017 and numbered 17-3645.

24  *See id*. at Ex. E.  In this grievance, plaintiff states that he requested a transfer south and that

25

26  Case No. 17-CV-3808 LHK (PR)
    ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING DISCOVERY
27  MOTIONS; DENYING STAY MOTION
                                                  10
28

Counselor Curiel said plaintiff "couldn't go to [one of plaintiff's preferred prisons] because [plaintiff] wouldn't sign some paper." *Id*. Plaintiff states that "this is an act of harassment and retaliation." *Id*.

Plaintiff also states that he filed an earlier grievance regarding these actions. *Id*. Plaintiff did not attach this grievance to his Opposition, and the record does not reveal its content, outcome, or timing. Apparently referring to this unattached grievance, plaintiff stated he "attempted to file" a grievance against Counselor Curiel for retaliation on May 1, 2017. *See* Additional Grievances at Ex. E. However, plaintiff also stated that he did not request a transfer from Counselor Curiel until May 18, 2017. *See id*. These dates would have plaintiff making a transfer request 17 days *after* Counselor Curiel denied that same request and plaintiff grieved the denial.

The First Additional Grievance was cancelled on July 19, 2017 because it "duplicate[d] a previous appeal upon which a decision has been rendered or is pending." *Id*.

Plaintiff filed a Second Additional Grievance on July 27, 2017, numbered 17-4383. *Id*. Plaintiff repeated the allegations from his First Additional Grievance, and additionally appealed the cancellation of the First Additional Grievance. *Id*. The Second Additional Grievance bypassed the first level of review. *Id*. At the second level, Chief Deputy Warden Binkele denied the Second Additional Grievance, but stated the First Additional Grievance "w[ould] be processed and assigned for response." *Id*. Plaintiff does not attach a third-level decision as to the First Additional Grievance.

Plaintiff appealed Chief Deputy Warden Binkele's decision on the Second Additional Grievance to the third level of review. *See* 2d Additional Grievance. Plaintiff added a statement that the staff's failure to act at the second level of review "[led] [him] to believe that staff are already aware of [Counselor Curiel's] conduct and attempting to cover it up . . . This is the reason for their refusal to investigate this matter." *See id*. Appeals Examiner Liu performed the third

level of review and concluded that the First Additional Grievance was in fact duplicative of an earlier-filed grievance. *See id.* (third level decision entitled "Local Log No.: SVSP-17-04383") ("SAG 3d Level"). Appeals Examiner Liu declined to address new issues raised in plaintiff's appeal to the third level and denied plaintiff's appeal on December 11, 2017. *See* SAG 3d Level.

### H.    Proceedings in this Court

Plaintiff filed the instant suit on June 29, 2017. *See* Dkt. No. 1-1 ("Complaint" or "Compl.") at 2. The Court dismissed the Complaint with leave to amend. *See* Dkt. No. 8 ("Dismissal Order"). In the Dismissal Order, the Court concluded that, liberally construed, plaintiff had stated a claim for violation of the Eighth Amendment as to deliberate indifference to safety; that plaintiff had failed to state an Eighth Amendment claim predicated on deliberate indifference to serious medical needs because he did not allege actual injury; and that plaintiff had failed to state a First Amendment claim because that claim had not been exhausted. *See id.* at 3-4. The Court allowed plaintiff to amend his Complaint, including only fully exhausted claims. *See id.* at 4. When plaintiff failed to amend within the allotted time, the Court ordered service of the sole surviving Eighth Amendment claim. *See* Dkt. No. 9 ("Service Order").

Two months after the Service Order, plaintiff filed the FAC. *See* FAC. The FAC listed dates on which plaintiff contended his various grievances had been exhausted, but did not attach the grievances. *See generally*, *id.* In the FAC, plaintiff alleged that defendants Captain Sullivan, Dr. Kumar, Nurse Doehring, Counselor Curiel, and Appeals Examiner Liu were deliberately indifferent to plaintiff's serious medical needs and deliberately indifferent to his safety. Plaintiff argued that by being deliberately indifferent, all five defendants had violated plaintiff's rights under the Eighth Amendment. Plaintiff also alleged that Counselor Curiel retaliated against plaintiff, after plaintiff expressed an intent to file a civil rights case, by denying plaintiff a transfer

1   to a prison south of his current place of incarceration.  Plaintiff argued that Counselor Curiel's

2   alleged retaliation violated plaintiff's rights under the First Amendment.  *See generally*, *id.*

3         Pursuant to defendants' motion, the Court screened the FAC and concluded that, liberally

4   construed, plaintiff had stated cognizable claims.  *See* Dkt. No. 29 ("Screening Order") at 4.  The

5   Screening Order established a new briefing schedule, and defendants moved for summary

6   judgment within the allotted time.  *See* MSJ.  After defendants filed their Summary Judgment

7   Motion, plaintiff filed three motions seeking additional discovery.  *See* Dkt. Nos. 48-50.

8   Apparently in response, defendants sought a protective order staying discovery until the Court

9   ruled on the Summary Judgment Motion.  *See* Dkt. No. 55.

## II.    LEGAL STANDARD

11        Summary judgment is proper where the pleadings, discovery, and affidavits show that

12  there is "no genuine dispute as to any material fact and [that] the movant is entitled to judgment as

13  a matter of law."  Fed. R. Civ. P. 56(a).  Material facts are those which may affect the outcome of

14  the case.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a

15  material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for

16  the nonmoving party.  *See id.*

17        A court will grant summary judgment "against a party who fails to make a showing

18  sufficient to establish the existence of an element essential to that party's case, and on which that

19  party will bear the burden of proof at trial [,] . . . since a complete failure of proof concerning an

20  essential element of the nonmoving party's case necessarily renders all other facts immaterial."

21  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  The moving party bears the initial

22  burden of identifying those portions of the record that demonstrate the absence of a genuine issue

23  of material fact.  *Id.*  The burden then shifts to the nonmoving party to "go beyond the pleadings,

24  and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on

26  Case No. 17-CV-3808 LHK (PR)
    ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING DISCOVERY
    MOTIONS; DENYING STAY MOTION

file, designate specific facts showing that there is a genuine issue for trial." *See id.* at 324 (internal quotations omitted).

Once the burden shifts to the non-moving party, that party "must show more than the mere existence of a scintilla of evidence." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Liberty Lobby*, 477 U.S. at 252). "[T]he non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Id.* (citing *Liberty Lobby*, 477 U.S. at 252). If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." *Celotex Corp.*, 477 U.S. at 323.

For purposes of summary judgment, courts must view the evidence in the light most favorable to the nonmoving party; if the evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the court must assume the truth of the evidence submitted by the nonmoving party. *See Leslie*, 198 F.3d at 1158.

## III. DISCUSSION

Plaintiff asserts two claims in the instant case. The Court first addresses plaintiff's Eighth Amendment claim and then addresses plaintiff's First Amendment claim.

Plaintiff's first claim is for an Eighth Amendment violation by all five defendants: M. Curiel, a correctional counselor at SVSP ("Counselor Curiel"); P. Sullivan, a captain at SVSP ("Captain Sullivan"); K. Kumar, a chief medical executive and doctor at SVSP ("Dr. Kumar"); E. Doehring, then a nurse practitioner at SVSP ("Nurse Doehring"); and H. Liu, an appeals examiner for the California Department of Corrections and Rehabilitation ("Appeals Examiner Liu") (collectively, "defendants"). Plaintiff alleges that defendants were deliberately indifferent to his serious medical needs and safety because they failed to grant his request for single-cell accommodation. *See FAC*. Plaintiff alleges that he is rectally incontinent; that this incontinence irritates his cellmates and could lead to a physical altercation; that because of back trouble he

1    would be unable to defend himself during a physical altercation; and that he thus needs single-cell

2    accommodation. *See id.*

3    Defendants argue they are entitled to summary judgment on plaintiff's Eighth Amendment

4    claim because that claim fails on the merits.[1]  Specifically, defendants contend plaintiff has

5    demonstrated neither a substantial risk of harm nor that defendants were deliberately indifferent to

6    plaintiff's serious medical needs.  Defendants argue plaintiff lacks a compensable injury, such that

7    he cannot get damages, and that even if plaintiff were entitled to damages, defendants are entitled

8    to qualified immunity.  Finally, defendants argue plaintiff failed to exhaust his Eighth Amendment

9    claim as to Nurse Doehring, Dr. Kumar, and Appeals Examiner Liu. *See generally*, MSJ.

10   Because "the exhaustion question in PLRA cases . . . should be decided, if feasible, before

11   reaching the merits of a prisoner's claim," *Albino v. Baca*, 747 F.3d 1162, 1170 (9th Cir. 2014),

12   the Court will address defendants' exhaustion arguments first.  As detailed below, the Court

13   concludes that plaintiff exhausted his claim as to Dr. Kumar and Nurse Doehring but failed to

14   exhaust as to Appeals Examiner Liu.  The Court will then address the merits of plaintiff's Eighth

15   Amendment claim as to Captain Sullivan, Counselor Curiel, Dr. Kumar, and Nurse Doehring.  As

16   detailed below, the Court finds that defendants were not deliberately indifferent to plaintiff's

17   serious medical needs.  The record reveals that plaintiff told defendants he had no safety concerns

18   regarding not being single-celled.  Because defendants did not know of any safety concerns, it is

19   beyond dispute that they lacked the requisite mental state.  On that basis, the Court grants

20   defendants' Summary Judgment Motion as to plaintiff's Eighth Amendment claim.

---

23   [1] Defendants have provided a *Rand* notice. *See* Dkt. No. 40-14; *see also Woods v. Carey*, 684
     F.3d 934, 935 (9th Cir. 2012) ("We hold in this case that *Rand* and *Wyatt* notices must be served
24   concurrently with motions to dismiss and motions for summary judgment so that pro se prisoner
     plaintiffs will have fair, timely and adequate notice of what is required of them in order to oppose
25   those motions.").

United States District Court
Northern District of California

Plaintiff's second claim alleges that Counselor Curiel violated plaintiff's First Amendment rights. Plaintiff alleges that, when plaintiff threatened to file a civil rights complaint regarding this deliberate indifference, Counselor Curiel recommended plaintiff be transferred to a prison farther away from his family, that this recommendation was retaliatory, and that this retaliation violated the First Amendment.

Defendants argue that plaintiff's First Amendment claim fails on the merits because plaintiff failed to present any evidence that Counselor Curiel took retaliatory action. Defendants also argue that plaintiff failed to exhaust this claim.

As with plaintiff's Eighth Amendment claim, the Court will address defendants' exhaustion argument first. Because the Court finds that plaintiff failed to exhaust his First Amendment claim against Counselor Curiel, the Court need not analyze the merits of this claim. Because the First Amendment claim was not exhausted, the Court grants defendants' Summary Judgment Motion as to this claim.

**A.      Eighth Amendment Claim**

Plaintiff alleges that Counselor Curiel, Captain Sullivan, Dr. Kumar, Nurse Doehring, and Appeals Examiner Liu (collectively, "defendants") improperly denied plaintiff's request to be single-celled as an accommodation for plaintiff's rectal incontinence, and that this denial exhibits a deliberate indifference to his serious medical needs and safety. Plaintiff holds all five defendants responsible for this Eighth Amendment violation.

**i.      Exhaustion of the Eighth Amendment Claim**

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. 1997e(a). Compliance with the exhaustion requirement is

mandatory, *see Porter v. Nussle*, 534 U.S. 516, 524 (2002), and is not left to the discretion of the district court, *see Woodford v. Ngo*, 548 U.S. 81, 84 (2006).

The PLRA's exhaustion requirement cannot be satisfied by filing a "procedurally defective administrative grievance or appeal." *Woodford*, 548 U.S. at 84. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules . . . ." *Id.* at 90-91 (footnote omitted). Here, the PLRA exhaustion requirement requires plaintiff to follow the CDCR's grievance procedures. *See id*

CDCR requires inmates to list the names of the alleged wrongdoers in the inmates' administrative appeals. *See* Cal. Code Regs. tit. 15, § 3084.2(a)(3) ("The inmate or parolee shall list all staff member(s) involved and shall describe their involvement in the issue."). Inmates must also "describe the specific issue under appeal and the relief requested," *id*. at § 3084.2(a)(2), and do so in the first level grievance, *see id*. at § 3084.1(b). In addition, a grievance must at minimum "'alert[] the prison to the nature of the wrong for which redress is sought'" and "put prison officials on notice of [the plaintiff's] complaint." *Morton v. Hall*, 599 F.3d 942, 946 (9th Cir. 2010).

Construing the facts in favor of the non-moving party, as the court must on a motion for summary judgment, *see Leslie*, 198 F.3d at 1158, plaintiff appears to have exhausted his Eighth Amendment claim as to Nurse Doehring and Dr. Kumar. However, the record shows that plaintiff did not exhaust his Eighth Amendment claim as to Appeals Examiner Liu.

a. Nurse Doehring and Dr. Kumar

Plaintiff filed a Single-Cell Grievance for the denial of his request for single-cell status. *See* Single-Cell Grievance. In the Single-Cell Grievance, plaintiff stated that Nurse Doehring "believed [plaintiff's] medical condition required single-cell housing." *Id*. A classification committee consisting of at least Captain Sullivan and Counselor Curiel then evaluated Nurse

United States District Court
Northern District of California

Case No. 17-CV-3808 LHK (PR)
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING DISCOVERY MOTIONS; DENYING STAY MOTION
17

Doehring's statements. *See* FAC at 3-A; Dkt. No. 40-4. Captain Sullivan, who chaired the classification committee, denied plaintiff's single-cell housing request. *See* FAC at 3-A. In the Single-Cell Grievance, Plaintiff stated that Captain Sullivan "ha[d] over-stepped his authority by denying a treating physician's [sic] recommendation, thereby placing [plaintiff's] health at risk," and that this "show[ed] a deliberate indifference to [plaintiff's] serious medical needs." Single-Cell Grievance at AGO 17. The Single-Cell Grievance bypassed the first level of review, and so there is no decision at the first level. *See id.*

Plaintiff's initial Single-Cell Grievance failed to comply with California's proscribed grievance procedure. California requires inmates to describe the specific problems in the initial grievance and to list all staff members involved. *See* Cal. Code Regs. tit. 15, §§ 3084.1(b), 3084.2(a)(3). Here, plaintiff did not allege wrongdoing by Nurse Doehring or Dr. Kumar in the initial Single-Cell Grievance. *See* Single-Cell Grievance at AGO 14, 17. Instead, plaintiff stated Captain Sullivan "denied the . . . recommendation for single cell housing," that "[Captain] Sullivan ha[d] over-stepped his authority" in doing so," and that this "show[ed] a deliberate indifference to [plaintiff's] serious medical needs." *Id.* Thus, the only wrongdoing alleged in the initial Single-Cell Grievance is by Captain Sullivan.

The Single-Cell Grievance does not refer to any wrongdoing by Counselor Curiel. *See* Single-Cell Grievance. However, it discusses Captain Sullivan's actions at the classification committee, of which Counselor Curiel was a member. *See* FAC at 3-A; Dkt. No. 40-4. The allegations against Captain Sullivan may therefore extend to Counselor Curiel. Defendants do not argue plaintiff failed to exhaust his Eighth Amendment claim as to Counselor Curiel.

The initial Single-Cell Grievance mentions Nurse Doehring only to say that she recommended single-cell status for plaintiff. *See id.* This does not allege wrongdoing by Nurse Doehring. Plaintiff's Eighth Amendment claim is predicated on a wrongful *denial* of single-cell

1   status, and so Nurse Doehring could not have wronged plaintiff by recommending he be *granted*

2   that status.  The initial Single-Cell Grievance does not mention Dr. Kumar at all.  *See id*.  Because

3   the initial Single-Cell Grievance does not state what Dr. Kumar or Nurse Doehring are alleged to

4   have done wrong, plaintiff failed to exhaust as to Dr. Kumar and Nurse Doehring.  *See* Cal. Code

5   Regs. tit. 15, § 3084.1(b).

6          However, the exhaustion requirement may still have been satisfied as to Nurse Doehring

7   and Dr. Kumar because defendants appear to have ignored the procedural defects at the third level

8   of review.  The Ninth Circuit has held that a procedurally defective grievance may still satisfy the

9   exhaustion requirement if prison officials ignore the defect and decide the grievance on the merits.

10  *See Reyes v. Smith*, 810 F.3d 654, 656, 658 (9th Cir. 2016) (adopting this rule in agreement with

11  all "sister" circuits).  In that case, a California inmate whose grievance failed to name all staff

12  members involved in his problem, as required by 15 Cal. Code Regs. § 3084.2(a), nevertheless

13  exhausted his claim of deliberate indifference to his serious medical needs because that claim was

14  decided on its merits at all levels of review.  *See id.* at 656-57.

15         Here, officials may have decided plaintiff's allegations against Nurse Doehring and Dr.

16  Kumar on the merits at the third level of review despite the procedural defects.  After the initial

17  Single-Cell Grievance bypassed the first level of review and proceeded directly to the second

18  level, it received a second-level decision by Chief Deputy Warden Binkele.  *See* Single-Cell 2d

19  Level.  In the Single-Cell 2d Level, Chief Deputy Warden Binkele included new facts regarding

20  Nurse Doehring and Dr. Kumar, though those facts had not been included in the initial Single-Cell

21  Grievance.  *Compare* Single-Cell Grievance at AGO 14, 17 (failing to identify wrongdoing by Dr.

22  Kumar and Nurse Doehring) *with*  Single-Cell 2d Level at AGO 19 ("Dr. Kumar stated that she

23  would inform [Nurse Doehring] to remove Inmate Haney's single cell status" and "[Nurse]

24

25

26  Case No. 17-CV-3808 LHK (PR)
    ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING DISCOVERY
27  MOTIONS; DENYING STAY MOTION
28

1   Doehring stated that she made [a] mistake placing single cell status on Inmate Haney's 7410," and

2   "mistakenly granted appellate single cell status.").

3       In plaintiff's appeal to the third level of review, plaintiff added new arguments against Dr.

4   Kumar and Nurse Doehring to the same form used for his initial Single-Cell Grievance.  *See*

5   Single-Cell Grievance at AGO 15-16.  Because plaintiff's arguments appear on one form,

6   references to the Single-Cell Grievance refer to the form.  Where necessary, the Court will

7   differentiate between arguments made in plaintiff's initial Single Cell Grievance, and the

8   arguments plaintiff expanded on the Single-Cell Grievance form when appealing to the third level

9   of review.

10      Plaintiff argued that Nurse Doehring had removed her recommendation for single-cell

11  status at the direction of Dr. Kumar.  *See id*. at AGO 16.  This expanded Single-Cell Grievance

12  received a third-level decision by Appeals Examiner Liu.  *See* Single-Cell 3d Level.  In the Single-

13  Cell 3d Level, Appeals Examiner Liu repeated the facts added by Chief Deputy Warden Binkele to

14  the Single-Cell 2d Level, and summarized the new arguments added by plaintiff in the expanded

15  Single-Cell Grievance.  *See id*.  Appeals Examiner Liu concluded that "[t]he appellant has failed

16  to submit any evidence that the actions of *the staff* were inappropriate."  *Id*. at 12-13 (emphasis

17  added).

18      In the Single-Cell 3d Level, Appeals Examiner Liu may have addressed the new

19  allegations against Dr. Kumar and Nurse Doehring that plaintiff raised in his expanded Single-Cell

20  Grievance.  Appeals Examiner Liu did not specify whether "the staff" described only staff

21  members mentioned in plaintiff's initial Single-Cell Grievance – Captain Sullivan and Counselor

22  Curiel – or whether it also described Nurse Doehring and Dr. Kumar.  *See id*.  The Single-Cell 3d

23  Level could thus be read as addressing the merits of plaintiff's initial allegations against only

24  Captain Sullivan and Counselor Curiel, or as addressing plaintiff's expanded allegations to the

25

26  Case No. 17-CV-3808 LHK (PR)
    ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING DISCOVERY
27  MOTIONS; DENYING STAY MOTION

28

third level of review, against Captain Sullivan, Counselor Curiel, Dr. Kumar, and Nurse Doehring.

Viewing the evidence in the light most favorable to plaintiff, as courts must at summary judgment,

*see Leslie*, 198 F.3d at 1158, the Court concludes there is a genuine issue of material fact as to

whether the Single-Cell 3d Level addressed plaintiff's allegations against Nurse Doehring and Dr.

Kumar, in addition to plaintiff's allegations against Captain Sullivan and Counselor Curiel. If the

new claims were addressed, then this cured the procedural defects of the initial Single-Cell

Grievance.

Because the procedural defects of the initial Single-Cell Grievance may have been cured,

Plaintiff may have exhausted his Single-Cell Grievance against Nurse Doehring and Dr. Kumar.

Defendants thus are not entitled to summary judgment on this ground.

### b. Appeals Examiner Liu

Plaintiff contends Appeals Examiner Liu violated plaintiff's right to medical treatment and

showed deliberate indifference to his serious medical needs by "disregard[ing] medical records

and falsif[ying] reports" in considering plaintiff's administrative appeal. FAC at 3-C. Plaintiff

alleges Appeals Examiner Liu wrongfully denied plaintiff's appeal of the Single-Cell Grievance,

"threaten[ed] plaintiff with a rule violation," and "denied [plaintiff] a third level review of [his]

claim of harassment and retaliation," by "cancel[ing] the appeal without review."[2] *Id.*

Appeals Examiner Liu's conduct is not discussed in any Grievance. Plaintiff does not

mention any action by Appeals Examiner Liu in any stage of the Single-Cell Grievance. *See*

*generally*, Single-Cell Grievance. Instead, the initial Single-Cell Grievance discussed wrongdoing

by Captain Sullivan (and possible Counselor Curiel by implication), and plaintiff added

---

[2] While the Court does not reach the merits of plaintiff's claims as to Appeals Examiner Liu, the Court notes that failure to properly process or investigate a grievance generally does not violate a prisoner's constitutional rights. *See Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (concluding there is no constitutional right to a prison administrative appeal or grievance system).

Case No. 17-CV-3808 LHK (PR)
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING DISCOVERY MOTIONS; DENYING STAY MOTION

1   allegations against Dr. Kumar and Nurse Doehring in his appeal to the third level. *See id*. Nor did

2   plaintiff discuss wrongdoing by Appeals Examiner Liu in the Transfer or Additional Grievances.

3   *See generally*, Transfer Grievance, Additional Grievances. Appeals Examiner Liu's name never

4   appears in any grievance and does not appear in the record until Appeals Examiner Liu issues a

5   third-level decision. *Compare* Single-Cell Grievance, Transfer Grievance, Additional Grievances

6   *with* Single-Cell 3d Level at AGO 11-13, SAG 3d Level.

7       California requires inmates to list the names of alleged wrongdoers in the inmates'

8   administrative appeals. *See* Cal. Code Regs. tit. 15, § 3084.2(a)(3) ("The inmate or parolee shall

9   list all staff member(s) involved and shall describe their involvement in the issue."). Because

10  plaintiff failed to point to any wrongdoing by Appeals Examiner Liu in any of plaintiff's

11  grievances, plaintiff has not exhausted his Eighth Amendment claim as to Appeals Examiner Liu.

12      Plaintiff concedes he did not file a separate grievance against Appeals Examiner Liu but

13  appears to believe the Single-Cell 3d Level simultaneously showed wrongdoing by Appeals

14  Examiner Liu and exhausted plaintiff's claim for that wrongdoing. *See* Opp. at 11 ("The third

15  level of review exhausts all administrative remedies. Defendant, H. Liu, Appeals Examiner, is the

16  third level of review and exhaust[s] all remedies against this defendant."). Plaintiff relies on a

17  California regulation describing the third level of review. *See* Opp. at 11 (citing § 3084.7).

18  However, plaintiff's interpretation of this regulation is incorrect.

19      The California regulation at issue states that "[t]he third level is for review of appeals not

20  resolved at the second level, or . . .[w]hen the inmate or parolee appeals alleged third level staff

21  misconduct or appeals a third level cancellation decision or action." Cal. Code Regs. tit. 15, §

22  3084.7(c). The regulation does not allow a third-level appeal decision simultaneously to act as

23  proof of wrongdoing and to exhaust remedies as to that wrongdoing, as plaintiff appears to

24

25

28

believe. Instead, the regulation allows an inmate to appeal wrongdoing or errors at the third level

directly to the third level, in effect bypassing the first and second levels in a *new* grievance. Thus,

> [T]he defendants are entitled to summary judgment because Wilson
> failed to exhaust his administrative remedies as required by the Prison
> Litigation Reform Act. . . . After receiving an unsatisfactory response
> to his initial grievance about his missing benefits checks, Wilson filed
> an appeal at the first level of review. When his initial appeal produced
> an unsatisfactory result, he appealed to the second level of review,
> and then to the third level. Indeed, Wilson did almost everything
> required to exhaust his claim. But at the third level of review, instead
> of reaching the merits, the Office of Appeals cancelled Wilson's
> appeal for lack of jurisdiction. Under the applicable regulations, this
> was not the end of the line — instead, Wilson had the opportunity to
> (and was required to) appeal the cancellation. . . . However silly it
> might seem to require Wilson jump through this additional hoop by
> asking the Appeals Chief to reverse the jurisdictional determination,
> because Wilson did not do so, he did not properly exhaust his claim.

*Wilson v. Zubiate*, No. 14-CV-01032-VC, 2016 WL 3197394, at *1 (N.D. Cal. June 8,

2016), *aff'd,* 718 F. App'x 479 (9th Cir. 2017); *cf.* Cal. Code Regs. tit. 15, § 3084.6(e) ("If an

appeal is cancelled at the third level of review, any appeal of the third level cancellation decision

shall be made directly to the third level Appeals Chief."). Because plaintiff concedes he never

filed a separate grievance against Appeals Examiner Liu, plaintiff concedes he never "jump[ed]

through this additional hoop." *Wilson*, 2016 WL 3197394, at *1. Plaintiff therefore did not

exhaust any grievances he may have against Appeals Examiner Liu.

   Defendants' production of evidence showing plaintiff did not exhaust as to Appeals

Examiner Liu shifted the burden to plaintiff to "come forth with evidence from which a jury could

reasonably render a verdict in" his favor. *Oracle Corp. Sec. Litig.*, 627 F.3d at 387. Plaintiff did

not present any grievance filed against Appeals Examiner Liu, and thus failed to carry plaintiff's

burden at summary judgment. The Court finds that Appeals Examiner Liu is entitled to summary

judgment on plaintiff's Eighth Amendment claim. *See Albino,* 747 F.3d at 1166.

Accordingly, the Court **GRANTS** defendants' Summary Judgment Motion as to Appeals Examiner Liu.

### ii. Merits of the Eighth Amendment Claim

Plaintiff alleges that Counselor Curiel, Captain Sullivan, Dr. Kumar, Nurse Doehring, and Appeals Examiner Liu violated plaintiff's Eighth Amendment rights. As found, *supra* III.A.i.b, plaintiff failed to exhaust his Eighth Amendment claim as to Appeals Examiner Liu. Accordingly, the Court shall analyze the merits of plaintiff's Eighth Amendment claim as to Counselor Curiel, Captain Sullivan, Dr. Kumar, and Nurse Doehring.

Again, plaintiff alleges that he has been rectally incontinent since 2012, following hemorrhoid surgery. *See* Dep. at 47:17-18; *see also* Med. Note. Plaintiff alleges that this incontinence renders him unable to control his bowels, and that plaintiff's accidents would irritate any cellmate. *See* FAC at 3. Plaintiff argues that this irritation could rise to the level of a physical fight, in which plaintiff would be unable to defend himself due to spinal problems. *See id*.

Plaintiff has had six or seven cellmates during his current period of incarceration. *See* Dep. at 29:3-12, 29:22-30:17, 31:14-20, 41:15-21, 45:13-18 (plaintiff recalls six cellmates); *but see* Dkt. No. 40-4 at AGO 01-02 (listing seven cellmates). Plaintiff concedes that he had a physical altercation with only one cellmate, and that neither plaintiff nor that cellmate were injured during that fight. *See id*. at 46:13-15, 33:5-33:7, 35:12-14. Plaintiff also concedes he did not tell prison officials about this physical fight. *See id*. at 39:7-9. For the last two and one-half years, plaintiff has not had a cellmate. *See id*. at 47:22-48:10.

Plaintiff asked Counselor Curiel to grant him single-cell status. FAC at 3. Counselor Curiel directed plaintiff to get a doctor's recommendation. *See id*. After obtaining a single-cell recommendation from Nurse Doehring, plaintiff appeared before a classification committee that denied single-cell status. *See id*. at 3-A. Plaintiff alleges this denial was improper and puts

1   plaintiff at risk of physical harm by a cellmate irritated by that rectal incontinence.  *See id*.

2   Plaintiff alleges this denial exhibited deliberate indifference to his serious medical needs, in

3   violation of the Eighth Amendment.  *See id*.; *see also Farmer v. Brennan*, 511 U.S. 825, 832

4   (1994) (holding that deliberate indifference to inmate health violates the Eighth Amendment).

5        A prison official violates the Eighth Amendment when two requirements are met: (1) the

6   deprivation alleged must be, objectively, sufficiently serious, and (2) the prison official possesses

7   a sufficiently culpable state of mind.  *See Farmer*, 511 U.S. at 834 (citing *Wilson v. Seiter*, 501

8   U.S. 294, 297-98 (1991)).  "To violate the Cruel and Unusual Punishments Clause [of the Eighth

9   Amendment], a prison official must have a 'sufficiently culpable state of mind.'  In prison-

10  conditions cases that state of mind is one of 'deliberate indifference' to inmate health or safety."

11  *Id*. (citations omitted).

12       Here, the undisputed facts show defendants lacked the requisite mental state.  *First*, the

13  record shows defendants were unaware of any previous fights plaintiff had with cellmates.  On

14  plaintiff's current period of incarceration, he has had one physical fight.  *See* Dep. at 46:13-15

15  ("Q.  How many times have you physically fought with a cellmate?  A.  Just that once.").  Plaintiff

16  concedes he did not report that fight to the prison authorities.  *See* Dep. at 39:7-9 ("Q.  Did you

17  personally ever report the fight with Inmate Williams to anyone who works for CDCR?  A.  No.");

18  *see also* Dkt. No. 40-4 (affirming, in a chrono signed by Haney, that the cellmates were "not

19  getting along," but that they did "not consider each other enemies" and there are "no pending

20  issues").  Because plaintiff did not report that fight to prison authorities, there was no record of

21  fighting before defendants.  *See* Dkt. No. 40-4 ("A review of Haney's file does not reflect a

22  pervasive pattern of in-cell violence or predatory behavior towards cell mates. . . . Haney is

23  currently double celled, has no current cell mate, and has no past incidents and programed [sic]

24  with past cell mates without incidents.  In addition, no vulnerability issues have been identified.").

25

26  Case No. 17-CV-3808 LHK (PR)
    ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING DISCOVERY
27  MOTIONS; DENYING STAY MOTION

28

*Second*, even if defendants were aware of the single fight, plaintiff concedes the fight was not over his rectal incontinence. *See* Dep. at 34:24-35:5 ("I don't think [the fight] was really all about just [the rectal incontinence], it's just that he didn't want nobody in the cell with him so I found out later. He didn't want anybody in the cell with him so he was just looking for an excuse and I had one."). There was thus no record before defendants suggesting plaintiff's rectal incontinence put plaintiff at risk of physical fights.

*Third*, even if defendants had been aware of the single fight, and even if that fight had been caused by plaintiff's rectal incontinence, the record does not demonstrate defendants were aware of any "objectively, sufficiently serious" risk to plaintiff. Plaintiff told prison officials that he had no safety concerns regarding being double-celled. *See* Med. Note ("P[atien]t denied any safety concern related to his double cell"). Moreover, plaintiff had six or seven cellmates between May 18, 2015 and August 20, 2016, *see* Dep. at 29:3-12, 29:22-30:17, 31:14-20, 41:15-21, 45:13-18; *but see* Dkt. No. 40-4 at AGO 01-02, but only fought with one cellmate on one occasion. In addition, plaintiff concedes that he was uninjured in that single fight. *See* Dep. at 33:5-33:7 ("Q. Did you have any injuries as a result of that fight? A. No visible injuries, just mainly sore."), 35:12-14 ("Q. Did you have to go see medical personnel after the fight? A. No.").

Plaintiff concedes that he told defendants he was not afraid of being harmed by a cellmate based on his rectal incontinence; that he did not tell defendants about the single fight; that the fight was not about plaintiff's rectal incontinence; and that plaintiff was not injured in that fight. Defendants could not be deliberately indifferent for failing to protect plaintiff from a threat they did not know existed, and which plaintiff told defendants he did not fear.

Plaintiff argues defendants' deliberate indifference is shown because they "violat[ed] . . . a 2016 memorandum issued by the Secretary of Corrections." Opp. at 3. In support of this argument plaintiff submits a CDCR Memorandum directing staff "to consider the vulnerability of

inmates with medical . . . condition[s] . . . when determining whether to grant single-cell status." Dkt. No. 56 at Ex. B ("Memorandum"). The Memorandum identified as potentially vulnerable any "inmate who is incontinent, and has 'uncontrolled mishaps' that require him to clean himself at all hours of the day and night." Mem. at 2. However, the Memorandum does not state that all inmates who suffer "uncontrolled mishaps" must be granted single-cell status. Instead, it says those inmates must be "considered" for single-cell status. *Id*. at 1, 2. Here, defendants considered, but rejected, plaintiff for single-cell status. Dkt. No. 40-4 at 6. Defendants thus obeyed the Memorandum.

Moreover, the Memorandum directs officials to consider these inmates for single-cell status because such inmates "*may* have an increase in their vulnerability to attack, threats, or extortion by a cell partner." Mem. at 2. But here, plaintiff told prison officials that he did not fear attack by a cell partner. *See* Med. Note; *see also* Dkt. No. 40-4 at 6 (concluding that plaintiff did not need single-cell status because "no vulnerability issues have been identified"). And as noted, there was no record before defendants of any fight plaintiff may have had with a cellmate, that would undercut plaintiff's representations. *See* Dep. at 39:7-9 (plaintiff never reported the single cellmate fight). Because the goal of the Memorandum is to protect vulnerable inmates, but plaintiff told defendants he was not vulnerable and defendants had no information to suggest otherwise, defendants were not deliberately indifferent for taking plaintiff at his word and concluding he fell outside the class of inmates the Memorandum aimed to protect.

Because the undisputed facts show that defendants were not deliberately indifferent to plaintiff's safety or serious medical needs, plaintiff has failed to demonstrate a violation of his Eighth Amendment rights.[3] Accordingly, the Court **GRANTS** defendants' Summary Judgment Motion as to plaintiff's Eighth Amendment claim.

---

Case No. 17-CV-3808 LHK (PR)
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING DISCOVERY MOTIONS; DENYING STAY MOTION

27

## B.     First Amendment Claim

Plaintiff alleges Counselor Curiel retaliated against plaintiff for expressing his intention to file the instant suit, that this retaliation took the form of recommending plaintiff be transferred farther away from his family, and that this retaliation violated plaintiff's First Amendment rights. *See* FAC at 3-D.  Defendants argue plaintiff failed to exhaust his First Amendment claim against Counselor Curiel.  The undisputed facts show plaintiff failed to exhaust his First Amendment claim.

In May 2017, four months after plaintiff's request to be single-celled was denied, plaintiff met with Counselor Curiel for plaintiff's annual review.  FAC at 3-D.  In that meeting, plaintiff asked Counselor Curiel to transfer plaintiff south to a prison closer to plaintiff's home and family. *Id*.  Plaintiff requested a transfer to four specific facilities, each of which happened to have a Level-III security classification.  *See* Dep. at 78:12-19; Counselor Curiel Decl. at ¶ 6.  Plaintiff has a Level-IV security classification.  Counselor Curiel Decl. at ¶ 3.

It is undisputed that Counselor Curiel recommended a classification committee affix a Determinant that would render plaintiff eligible to transfer to one of his requested Level-III facilities, south of SVSP.  *Id*. at ¶ 7.  It is also undisputed that a CSR then determined that none of plaintiff's requested facilities had room for plaintiff, and the CSR recommended plaintiff be transferred to a Level-III facility north of SVSP.  *Id*. at ¶ 9; MSJ at 7.  Plaintiff and defendants dispute whether the CSR reached the recommendation independently (which is defendants' position), or whether Counselor Curiel interfered with the CSR's process to deprive plaintiff of his chosen facilities, as an act of retaliation by Counselor Curiel for plaintiff's expressed intention to sue SVSP over the denial of plaintiff's single-cell request (plaintiff's position).  *Compare*

---

[3] Because the Court finds defendants were not deliberately indifferent, the Court need not address defendants' arguments that plaintiff lacks a compensable injury and defendants are entitled to qualified immunity.

1  Counselor Curiel Decl. (swearing to events) and Dkt. No. 40-4 (form completed by CSR, stating

2  reasons for CSR's decision) *with* Dep. at 88:2-88:14 (summarizing plaintiff's position).

3      After plaintiff's request for a transfer was denied, he filed at least three administrative

4  grievances about this denial. *See* Transfer Grievance, Additional Grievances. The Transfer

5  Grievance was filed on June 26, 2017, and exhausted on October 3, 2017. *See* Transfer

6  Grievance, Transfer 3d Level. The Additional Grievances were filed June 22, 2017 and July 27,

7  2017, respectively, and exhausted on December 11, 2017. *See* Dkt. No. 56 at Exs. E-F.

8      Plaintiff filed the instant suit on June 29, 2017.[4] *See* Dkt. No. 1-1 ("Complaint" or

9  "Compl.") at 2. Plaintiff alleged that defendants had violated his Eighth Amendment rights by

10  denying his request for single-cell status, and that Counselor Curiel had recommended plaintiff for

11  a transfer north, rather than south, in retaliation for plaintiff's expressed intention to file a civil

12  rights suit. *See id.* The Court dismissed the Complaint in part because it found plaintiff had not

13  exhausted his First Amendment claim, and gave plaintiff leave to amend with only fully exhausted

14  claims. *See* Dismissal Order at 4. Three months after plaintiff's amendment deadline, he filed the

15  FAC. *Compare* Dismissal Order *with* FAC. The FAC alleged that defendants had violated his

16  Eighth Amendment rights by denying his request for single-cell status, and that Counselor Curiel

17  had recommended plaintiff for a transfer north, rather than south, in retaliation for plaintiff's

18  expressed intention to file a civil rights suit. *See generally*, FAC.

19      In addition to fulfilling California's procedural requirements, *see supra* III.A.i

20  (summarizing general exhaustion requirements), the PLRA requires inmates to exhaust

21  administrative remedies *before* filing suit:

22

23  ───────────────────

24  [4] *See* Compl. at 2 (stating the Complaint was mailed on June 29, 2017); *see also Douglas v.*
   *Noelle*, 567 F.3d 1103, 1109 (9th Cir. 2009) (applying the mailbox rule to prisoner's § 1983

25  complaint) (relying on *Houston v. Lack*, 487 U.S. 266 (1988)).

26  Case No. 17-CV-3808 LHK (PR)
   ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING DISCOVERY
27  MOTIONS; DENYING STAY MOTION

29

28

> *McKinney* held that the PLRA's exhaustion requirement does not allow a prisoner to file a complaint addressing non-exhausted claims, even if the prisoner exhausts his administrative remedies while his case is pending. . . . *Vaden* held that a prisoner must exhaust his administrative remedies before he tenders his complaint to the district court. . . . Together, these cases stand for the proposition that a prisoner must exhaust his administrative remedies for the claims contained within his complaint before that complaint is tendered to the district court.

*Rhodes*, 621 F.3d at 1004–05 (summarizing the pre-suit exhaustion requirement) (citations omitted). Here, plaintiff failed to exhaust his First Amendment claim against Counselor Curiel before filing suit.

"Administrative exhaustion within California requires the completion of the third level of administrative review." *Jackson*, 870 F.3d at 933. Alternatively, a grievance may be deemed exhausted if the form rejecting an inmate's appeal informs him that the rejection is non-appealable. *See Marella v. Terhune*, 568 F.3d 1024, 1026 (9th Cir. 2009).

Here, the Transfer 3d Level was not issued until October 3, 2017, *see* Transfer 3d Level at AGO 21, and so the Transfer Grievance was not exhausted until that date. This is more than three months after plaintiff filed his Complaint in this court. *See* Compl. at 2 (stating the Complaint was mailed June 29, 2017); *see also Douglas v. Noelle*, 567 F.3d 1103, 1109 (9th Cir. 2009) (applying the mailbox rule to prisoner's § 1983 complaint). Because the Transfer Grievance was not exhausted until three months after plaintiff filed suit, plaintiff failed to fulfill the pre-suit exhaustion requirement as to that grievance. Similarly, the Additional Grievances do not fulfill the pre-suit exhaustion requirement because they were not exhausted until December 11, 2017, more than five months after plaintiff filed suit.[5] *See* 2d Additional Grievance.

---

[5] Even if the mailbox rule did not apply here, plaintiff's suit was filed no later than July 5, 2017. *See* Compl. at 1 (displaying a "filed" stamp dated July 5, 2017). The Transfer and Additional Grievances would still not have been exhausted until after plaintiff filed suit.

Case No. 17-CV-3808 LHK (PR)
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING DISCOVERY MOTIONS; DENYING STAY MOTION

There is an exception to the pre-suit exhaustion requirement, where "a plaintiff files an amended complaint adding new claims based on conduct that occurred after the filing of the initial complaint," and "the new claims were exhausted before tendering the amended complaint." *Akhtar v. Mesa*, 698 F.3d 1202, 1210 (9th Cir. 2012). That exception does not apply here. The Complaint stated that "[Counselor Curiel's] actions were an act of retaliation . . . due to [plaintiff's] expressed intention to file a civil rights complaint . . . ." Compl. at 3-D. The FAC likewise accuses Counselor Curiel of retaliating on this ground. *See* FAC at 3-D. Because plaintiff's First Amendment claim against Counselor Curiel appeared in both the Complaint and FAC, and relies on the same facts in each, it is not a "new claim" and plaintiff is not eligible for the exception to the pre-suit exhaustion requirement.

The Court in this decision does not reach the merits of plaintiff's First Amendment claim, nor does it reach defendants' arguments that plaintiff failed to exhaust his claim against Counselor Curiel in the Transfer Grievance by failing to mention Counselor Curiel in the opening document. However, the Court notes that the initial Transfer Grievance makes no mention of any wrongdoing by Counselor Curiel. *See* Transfer Grievance at AGO 23, 25. Nor did plaintiff add allegations regarding Counselor Curiel's alleged retaliation to his appeal to the third level. *See id*. at AGO 24, 26. The Court notes for plaintiff's benefit that even if plaintiff had filed suit after the Transfer 3d Level issued a final decision, the Court would likely conclude plaintiff had failed to exhaust in the Transfer Grievance because it failed to mention wrongdoing by Counselor Curiel at any level. *See El-Shaddai v. Zamora*, 833 F.3d 1036, 1044 (9th Cir. 2016) (a dismissal for failure to exhaust counts as a strike under the PLRA if the deficiency is apparent from the face of the complaint).

In addition, plaintiff's First Amendment claim against Counselor Curiel would likely fail on the merits because the facts show that it was a non-party CSR who determined where plaintiff should be transferred. Counselor Curiel Decl. ¶ 9. Defendants have presented facts, in the form of

a declaration based on personal knowledge and a document supporting their position, showing that Counselor Curiel did not know which CSR was assigned to consider plaintiff's transfer request and did not contact the CSR. *Id.*; *see also* Dkt. No. 40-4. Defendants' production of facts shifted the burden to plaintiff to "come forth with evidence from which a jury could reasonably render a verdict in" his favor. *Oracle Corp. Sec. Litig.*, 627 F.3d at 387. Plaintiff failed to meet this burden. As plaintiff conceded at his deposition, plaintiff has no evidence to support his theory that Counselor Curiel interfered with the CSR's recommendation. *See* Dep. at 86:23-88:14. Accordingly, were the Court to reach the merits of plaintiff's First Amendment claim, it would conclude that Counselor Curiel did not make the transfer decision. Because Counselor Curiel did not make the transfer decision, that transfer order cannot be said to be an act of retaliation by Counselor Curiel. If anything, the facts demonstrate that Counselor Curiel attempted to secure plaintiff the transfer he requested. *See* Counselor Curiel Decl. ¶ 7.

Accordingly, the Court **GRANTS** defendants' Summary Judgment Motion as to the First Amendment claim against Counselor Curiel.

## IV.    DISCUSSION OF DISCOVERY MOTIONS

After defendants filed their Summary Judgment Motion, plaintiff filed three motions seeking additional discovery. *See* Dkt. Nos. 48-50. Plaintiff seeks responses by Counselor Curiel as to two interrogatories related to plaintiff's First Amendment claim, and by Captain Sullivan as to three interrogatories related to plaintiff's Eighth Amendment claim. Apparently in response, defendants sought a protective order staying discovery until the Court ruled on the Summary Judgment Motion. *See* Dkt. No. 55.

Federal Rule of Civil Procedure 56(d) provides that if a party opposing summary judgment demonstrates a need for further discovery to obtain facts essential to justify the party's opposition, the court may deny the motion for summary judgment or continue the hearing to allow for such

United States District Court
Northern District of California

discovery. Fed. R. Civ. P. 56(d); *Margolis v. Ryan*, 140 F.3d 850, 853 (9th Cir. 1998). In making a Rule 56(d) motion, a party opposing summary judgment must make clear "what information is sought and how it would preclude summary judgment." *Id.* at 853-54 (district court correctly denied motion for continuance under Rule 56(f) where plaintiff did not provide any basis or factual support for his assertions that further discovery would lead to the facts and testimony he described, and his assertions appeared based on nothing more than "wild speculation"); *see also, e.g.*, *Nicholas v. Wallenstein*, 266 F.3d 1083, 1088-89 (9th Cir. 2001) (district court did not abuse its discretion in denying motion for continuance under former Rule 56(f) where plaintiffs did not make clear what information was sought and how it would preclude summary judgment). Rule 56(d) requires that the requesting party show (1) it has set forth in affidavit form the specific facts it hopes to elicit from further discovery, (2) the facts sought exist, and (3) the sought-after facts are essential to oppose summary judgment. *Family Home and Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008).

Here, plaintiff does not demonstrate how any "additional discovery would [] reveal[] specific facts precluding summary judgment," *see Tatum v. City and County of S.F.*, 441 F.3d 1090, 1101 (9th Cir. 2006), or how the sought-after facts are essential to oppose summary judgment, *Family Home and Finance Center, Inc.*, 525 F.3d at 827. In other words, plaintiff has not identified non-speculative facts likely to be discovered through his requests that are necessary to preclude summary judgment. *See Margolis*, 140 F.3d at 854.

As discussed, *supra* III.B, plaintiff's First Amendment claim against Counselor Curiel must be dismissed for lack of pre-suit exhaustion. Any responses to interrogatories related to that claim cannot help plaintiff avoid summary judgment. Similarly, plaintiff's Eighth Amendment claim fails at summary judgment because plaintiff conceded – on multiple occasions – that he had no fear of being victimized by cellmates. Any information plaintiff could elicit from Captain

Case No. 17-CV-3808 LHK (PR)
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING DISCOVERY MOTIONS; DENYING STAY MOTION

33

Sullivan regarding Captain Sullivan's medical training or lack thereof, or whether prison staff is omniscient as to prisoner relations (the subjects of the interrogatories plaintiff wants answered, *see* Dkt. No. 49), would be unavailing. Because plaintiff does not, and cannot, show discovery would help him avoid summary judgment, his discovery motions are **DENIED**.

Because the Court by this order grants summary judgment, defendants' motion for a discovery stay is **DENIED** as moot.

## CONCLUSION

Defendants' Summary Judgment Motion is **GRANTED** as to all claims. Plaintiff's discovery motions are **DENIED**, and defendants' stay motion is **DENIED** as moot.

**IT IS SO ORDERED.**

DATED: <u>March 4, 2019</u>

LUCY H. KOH
UNITED STATES DISTRICT JUDGE